William Leslie EVANS, Brent L. English, Tom H. Nagel, Nancy Wallis Ingling & Worthington Hills Civil Association, Plaintiffs,

v.

Russell E. TRAIN, Admr., U. S. Environmental Protection Agency, George R. Alexander, Jr., Regional Admr., U. S. Environmental Protection Agency, Kenneth R. Reed, Chairman, Dean Miller, James W. Whitney, Commissioners of Delaware County, Ohio, Defendants.

No. C–2–76–780.

United States District Court,
S. D. Ohio, E. D.

Jan. 30, 1978.

Christopher R. Schraff, Richard P. Fahey, Columbus, Ohio, for plaintiffs.

Clyde E. Lewis, W. Duncan Whitney, Delaware, Ohio, James E. Rattan, Asst. U. S. Atty., Columbus, Ohio, for defendants.

## OPINION AND ORDER

DUNCAN, District Judge.

Plaintiffs in this action seek declaratory and injunctive relief to restrain the defendants from constructing, or committing federal funds for the construction of the proposed Olentangy Environmental Control Center and Interceptor System (hereinafter OECC). The OECC is a proposed sewage treatment facility to be built in southern Delaware County between State Route 315 and the Olentangy River. Highbanks Metropolitan Park is located on the east side of the Olentangy River across from the proposed site for the OECC. The complaint alleges that the Environmental Impact Statement (EIS) prepared in connection with this project is inadequate to support the actions proposed by the defendants. The complaint also alleges that the defendants' approval of the OECC is arbitrary, capricious, and contrary to law. The plaintiffs further allege that the proposed discontinuance of private sewer systems will mandate tie-ins by area residents, accompa-

nied by property assessments, and is arbitrary, capricious and an unconstitutional denial of due process. The complaint alleges that the defendants have failed to comply with the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4321, *et seq.*, the Federal Water Pollution Control Act (FWPCA), 33 U.S.C. § 1251, *et seq.*, and the National Historic Preservation Act (NHPA), 16 U.S.C. § 470, *et seq.*

Defendants Administrator and Regional Administrator of the United States Environmental Protection Agency (the federal defendants) have moved to dismiss the complaint for failure to state a claim for which relief can be granted, or in the alternative, for summary judgment. Since this motion presents matters outside the pleadings, the Court will treat it as a motion for summary judgment pursuant to Fed.R.Civ.P. 56. See, Fed.R.Civ.P. 12(b).

The defendants, Commissioners of Delaware County (the Delaware defendants) have also moved for summary judgment, adopting much of the argument made by the federal defendants.

Although the plaintiffs contend that the defendants' motions for summary judgment are improper, the Court believes that certain claims made in the complaint may be properly decided on the present record. Summary judgment shall be granted if it appears that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). For the reasons set forth hereinbelow the Court will enter partial summary judgment in favor of the defendants. Fed.R.Civ.P. 56(d).

## I

In count one of the complaint plaintiffs allege that the EIS fails to comply with the requirements of NEPA because of an inadequate factual basis for the comparison of feasible alternative *sites* for the OECC and feasible alternative *methods* for solution of the Delaware sewage treatment problem. Plaintiffs assert that the EIS fails to set forth adequate reasons why the proposed action is believed to be the best course of action.

NEPA provides that:

[T]o the fullest extent possible . . . [a]ll agencies of the federal government shall

.     .     .     .     .

(C) Include in every recommendation or report on proposals for legislation and other Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on

.     .     .     .

(iii) Alternatives to the proposed action.

.     .     .     .     .

(E) study, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources.

.     .     .     .     .

42 U.S.C. § 4332.

The regulations promulgated under NEPA further provide that:

The EIS shall develop, describe, and objectively weigh feasible alternatives to any proposed action, including the options of taking no action or postponing action. The analysis should be detailed enough to show EPA's comparative evaluation of the environmental impacts, commitments of resources, costs, and risks of the proposed action and each feasible alternative. For projects involving construction, alternative sites must be analyzed in enough detail for reviewers independently to judge the relative desirability of each site. For alternatives involving regionalization, the effects of varying degrees of regionalization should be addressed. If a cost-benefit analysis is prepared, it should be appended to the EIS and referenced in the body of the EIS. In addition, the reasons why the proposed action is believed by EPA to be the best course of action shall be explained. 40 C.F.R. § 6.304(b).

The process used to choose the proposed site (OR–3) for the OECC is set forth in Chapters 3 and 4 and Appendix E of the EIS. The possible alternatives to the proposed action were placed into nine groups which were reflective of similar geographical and site characteristics. A "no action" alternative was also considered. Each alternative within a group was then evaluated in an effort to choose the best alternative from that group. In five groups all alternatives were eliminated. The "no action" alternative was also eliminated. The remaining four alternatives were then considered, with OR–3 chosen as the preferred site.

Plaintiffs contend that this process did not permit the comparison of alternatives on a consistent basis and the elimination of several alternatives without any detailed consideration. The plaintiffs further allege that the EIS fails to provide the reasons for choosing some sites over others, or that it gives merely vague and conclusory reasons. Plaintiffs also point out that some criteria are applied to different sites inconsistently.

One of the alternatives eliminated in the initial stages of the process was the Delaware County-Columbus alternative. This was one of six regional alternatives that had been proposed. No regional alternatives were included in the final selection process even though Congress has expressed a preference for regional or area-wide waste treatment management. *See*, 33 U.S.C. § 1288 (FWPCA). The Delaware County-Columbus alternative proposed the connection of the Delaware County interceptor system with the City of Columbus system. This alternative was rejected in the EIS because of "institutional problems" that would arise between the two governmental entities and because of insufficient information concerning the capacity of the Columbus system to accept the sewage from Delaware County. Plaintiffs allege that the information on the capacity of the Columbus system is available or can be readily ascertained. The EIS also shows that this alternative is far more cost effective than site OR–3.

The defendants contend that the EIS is adequate and meets the requirements of NEPA and the regulations. The defendants argue that 40 C.F.R. 6.304(b) requires a consideration of only the "feasible" alternatives. Alternatives that could not be readily implemented were not considered feasible and thus were not discussed in detail. None of the regional alternatives were considered to be readily implementable.

The defendants also argue that the objections raised by the plaintiffs may not be considered within the scope of review permitted in this Court. The scope of review under NEPA is similar to the "arbitrary, capricious, or abuse of discretion" standard applied to actions under the Administrative Procedure Act. The Court must determine whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.

> Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The Court is not empowered to substitute its judgment for that of the agency.

*Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971).

> So long as the officials and agencies have taken the "hard look" at environmental consequences mandated by Congress, the court does not seek to impose unreasonable extremes or to interject itself within the area of discretion of the executive as to the choice of the action to be taken. (Footnotes omitted.)

*Natural Resources Defense Council, Inc. v. Morton*, 458 F.2d 827, 838, 148 U.S.App.D.C. 5, 16 (1972). The United States Court of Appeals for the Sixth Circuit has noted that:

> N.E.P.A., although rigorous in its requirements, does not require perfection, nor the impossible. In assessing the adequacy of such statement, practicability and reasonableness (*see Environmental Defense Fund v. Corps of Eng.*, D.C., 342 F.Supp. 1211 at 1217) are to be taken into account along with the broad purposes of

the Act to preserve the values and amenities of the natural environment. This involves of course a balancing process . . .

*Environmental Defense Fund v. Tennessee Valley Authority,* 492 F.2d 466, 468 n. 1 (6th Cir. 1974).

■■■ An issue in this case is whether the EIS contains sufficient information to enable the report reader to independently judge the relative desirability of each site. 40 C.F.R. § 6.304(b). Although the EIS must generally be evaluated on its present content, the Court believes that the plaintiffs are entitled to show that relevant information has been omitted even though it was available. The plaintiffs may also offer evidence to show that a reasonable report reader with the requisite expertise could not make an independent judgment based on the content of the EIS, or that the EIS preparers rejected alternatives for reasons that are not discussed thoroughly in the EIS. *Cf., Atchison, Topeka and Santa Fe Railway Co. v. Callaway,* 382 F.Supp. 610, 623 (D.C.1974).

■■■ The Court finds that there are genuine issues as to material facts relating to the adequacy of the evaluation of alternative actions in the EIS. Therefore, summary judgment is denied as to count one of the complaint.

## II

Count two of the complaint also alleges that the EIS fails to comply with NEPA requirements. Here the plaintiffs assert that the EIS fails to describe the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity. 42 U.S.C. § 4332(2)(C)(iv). The regulations require that:

The EIS shall describe the extent to which the proposed action involves trade-offs between short term environmental gains at the expense of long-term gains or vice versa, and the extent to which the proposed action forecloses future options. Special attention shall be given to effects which narrow the range of future uses of

land and water resources or pose long-term risks to health and safety. Consideration should be given to implementing the proposed action. In addition, the reasons the proposed action is believed by EPA to be justified now, rather than reserving a long-term option for other alternatives, including no action, shall be explained.

40 C.F.R. § 6.304(e). The regulations also require:

A discussion of how socioeconomic activities and land use changes related to the proposed action conform or conflict with goals and objectives of approved or proposed Federal, regional, state and local land use plans, policies and controls for the project area should be included in the EIS. If a conflict appears to be unresolved in the EIS, EPA should explain why it has decided to proceed without full reconciliation.

40 C.F.R. § 6.304(c)(4).

■■■ The defendants claim that the NEPA requirements have been complied with, citing to specific portions of the EIS, and that the objections raised by the plaintiffs are hypercritical. The Court has reviewed the EIS and specifically those portions cited by the defendants. Upon this review alone the Court cannot agree with the defendants.

Much of the discussion in the EIS is very general and merely identifies possible problem areas without analysis. Where conclusions were made, some do not state the grounds upon which the conclusion was based. For example, the defendants refer to pages 5–25 and 5–36 for a discussion of windfall gains or significant decreases in current property values from implementing the proposed action. Page 5–36 merely describes the character of the land in the planning area. Page 5–25 simply lists "increased speculation" among other impacts. The EIS states on the same page, however, that speculation is already generally high and not expected to be greatly increased. The EIS further states that this is a short-term impact which may be reversed. The

EIS does not disclose the basis upon which the preparers concluded that speculation would not be greatly increased (or the parameters of the term "greatly"), or the means by which it could be reversed.

The Court believes the adequacy of the EIS on this issue to be questionable. Thus, the parties are entitled to produce evidence to show whether or not a reasonable report reader could make an independent assessment of the short-term and long-term impacts based upon the EIS. Summary judgment is accordingly denied with respect to count two.

### III

In count three of the complaint the plaintiffs allege that the EIS fails to analyze the cost effectiveness of alternatives to the proposed action. 33 U.S.C. § 1292(2)(B); 40 C.F.R. § 35.92507(a); 40 C.F.R. § 6.304(b). The defendants admit that a cost effectiveness comparison of only two sites (OR–3 and OR–7) is included in the EIS, but that the Delaware County-Columbus alternative would be far less expensive. The defendants argue, however, that § 6.304(b) requires a comparison of only "feasible" alternatives and that none of the regional alternatives was feasible.

Since the plaintiffs will be permitted to present evidence with respect to the discussion of alternative actions (count one), the Court believes that the question of which alternatives are feasible is still open. The Court further believes that the intent of the regulations is that construction and operating cost be considered as a factor in the comparison of the alternative sites during the selection process.

> The EIS shall serve as a means for the responsible official and the public to assess the environmental impacts of a proposed EPA action, rather than as a justification for decisions already made. 40 C.F.R. § 6.304.

Summary judgment with respect to count three of the complaint is denied.

### IV

Plaintiffs assert in their fourth count that the EIS utilizes incorrect and inadequate data in assessing the effects of waste waters which will be discharged from the proposed OECC. More specifically, plaintiffs allege that existing water quality data of the Olentangy River is inadequate, outdated, and incomplete; that incorrect flows are attributed to the Olentangy River in calculating the effects of discharges from the proposed plant upon the river; that waste loads attributed to the proposed plant are underestimated; and that an inadequate and incorrect analysis is made of the effects of the discharge of pollutants or combinations of pollutants which would be discharged from the proposed plant upon water quality, water uses, aquatic life, and the attainment and maintenance of water quality standards.

The defendants have responded that the plaintiffs' assertions are conclusory and that the water quality and stream flow data contained in the EIS is entitled to a presumption of regularity unless the sources of such information are shown to be biased or incompetent. *Citizens Organized to Defend the Environment v. Volpe*, 353 F.Supp. 520, 525 (S.D.Ohio 1972).

The Court agrees with the defendants that the scope of its review does not permit it to intervene in battles between experts or to choose between the relative merits of competing scientific views. *City of North Miami v. Train*, 377 F.Supp. 1264, 1273 (S.D. Fla.1974). The Court must determine if the selection and use of data was arbitrary and capricious, and whether the decisions (including the decision to proceed without further study) are supported by a reasonable record of environmental review. "This Court must decide whether the decision to proceed was arbitrary and capricious; not whether other and perhaps more accurate scientific studies should be made." *City of Romulus v. County of Wayne*, 392 F.Supp. 578, 587 (E.D.Mich.1975).

While agreeing with the general scope of review permitted, the plaintiffs contend that the inadequacy and incorrectness of

the data base is so great that action premised thereon is arbitrary and capricious. The Court must examine the record to assure itself that decisions are based on a consideration of the relevant factors. "[T]he agency may abuse its discretion by deciding the issues on an inadequate record." *Natural Resources Defense Council v. U. S. Nuclear Regulatory Commission,* 178 U.S.App.D.C. 336, 547 F.2d 633, 646 (1976).

The plaintiffs offer the affidavit of Dr. Robert Sykes in support of their position. There are also references within the EIS to the effect that some of the data relied upon was outdated or inadequate. The plaintiffs are entitled to an opportunity to show that available relevant data was omitted. The Court finds that there exists a genuine issue as to material fact on this count (four), and that summary judgment is therefore inappropriate.

## V

■ Count five alleges that the discharge of pollutants from the OECC will degrade water quality, adversely affect stream conditions and stream ecology, and will interfere with and injure present water uses. In support of this allegation the plaintiffs cite to page 5–8 of the EIS:

It is anticipated that some violations [of the present water quality standards and allowable waste load allocations] would occur if the historical modified or the adjusted minimum release 7-day, once in 10 year low flow is reached, because the present waste load allocations are based on a higher low flow value than these values.

The EIS also states, however,

No apparent violations of the present water quality standards and allowable waste load allocations would be caused by the proposed treatment facility. . . . The long-term effect to water quality would be beneficial, until low flow becomes very low, below the value used to calculate the present waste land allocation when the effect becomes detrimental. Inadequate treatment could make

these effects uniformly detrimental. However, the facility is designed to provide a very high degree of treatment.

Upon an examination of the entire EIS the Court finds that it contains sufficient information from which the report reader could conclude that the OECC would not degrade water quality. Chapters 4 and 5 contain a reasonably detailed description of the treatment process and the character of its discharge. The advanced tertiary treatment will result in a discharge to the river of reclaimed water of high quality. The reduction of septic tank inflow will also reduce the adverse environmental impact.

If the plaintiffs are successful in showing that the water quality data for the Olentangy used in the EIS is inadequate and incorrect, a re-examination of the effect that the discharge will have on the river may well be in order. The inadequacy or incorrectness of the water quality data would not, however, affect the character and quality of the discharge from the treatment facility. Therefore, the defendants' motions for summary judgment are granted with respect to count five.

## VI

■ Counts six and seven of the complaint allege that the federal defendants have approved federal funds for construction of the OECC without complying with the Federal Water Pollution Control Act as amended. Count six asserts that there is no basinwide plan for pollution abatement as required by 33 U.S.C. § 1313. Count seven asserts that there is no regional waste treatment management plan as required by 33 U.S.C. § 1288. Plaintiffs contend that the approval of federal funding in absence of either or both of such plans is violative of 33 U.S.C. § 1284(a)(1) and (2), which provides:

Before approving grants for any project for any treatment works under § 1281(g)(1) of this title the Administrator shall determine—

(1) that such works are included in any applicable areawide waste treatment

management plan developed under § 1288 of this title;

(2) that such works are in conformity with any applicable state plan under 1313(e) of this title;

. . . . .

The defendants argue that an effective areawide waste treatment management plan and basinwide plan for pollution abatement is not a prerequisite for federal funding, but only that if such plans presently exist, any proposed construction must be in conformity with the plans. The defendants' argument relies on the use of the phrase "any applicable . . . plan" in 33 U.S.C. § 1284(a)(1) and (2). The Court agrees with the position taken by the defendants.

It is true that the FWPCA encourages planning on a regional basis. Indeed, regional planning was a prerequisite to grant approval prior to the 1972 amendments; "No grant shall be made for any project pursuant to this section . . . unless such project is included in a comprehensive program developed pursuant to this chapter [33 U.S.C. § 1153]. 33 U.S.C. § 1158(b). The regulations cited by plaintiffs also predate the 1972 amendments. *See,* 40 C.F.R. § 35.835–2 and § 35.835–3. The post-1972 regulations provide that before awarding grant assistance for any project, the Regional Administrator shall determine:

That the facilities planning requirements set forth in §§ 35.917 through 35.-917–9 have been met.

Requirements set forth in § 35.150–1 [basin plans] and § 35.150–2 [regional and metropolitan plans] are not applicable.

. . . . .

That such works are in conformity with any applicable final basin plan approved in accordance with section 303(e) of the Act.

40 C.F.R. § 635.925–35.925–2. The legislative history of the 1972 amendments (P.L. 92–500) indicates that the House amendment would have prohibited grants unless the facilities were included in areawide plans. Although the House amendment was included in the Conference substitute,

the Senate Bill (S. 2770) was passed without the House amendment.

Thus, although regional planning is to be encouraged, the Court does not believe it is mandatory. Nor does the Court find any expression of Congressional intent that the construction of waste water treatment facilities be suspended pending preparation of areawide plans. Cf. 33 U.S.C. § 1287. The Court also notes that a facilities plan has been prepared for the proposed project pursuant to 40 C.F.R. § 35.925–1. Thus, this project is not being proposed in an absence of planning. The defendants' motions for summary judgment with respect to counts six and seven of the complaint are therefore granted.

## VII

Plaintiffs allege in count eight that the OECC will have an adverse effect on three sites (Indian mounds) in the Highbanks Metropolitan Park which are presently listed in the National Register of Historic Places. Plaintiffs contend, therefore, defendants' failure to request the comments of the Advisory Council on Historic Preservation, respecting such adverse effects and alternatives to the project which might avoid or satisfactorily mitigate any adverse effect, is in violation of the National Historic Preservation Act, 16 U.S.C. § 470 *et seq.*

The head of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking in any state and the head of any Federal department or independent agency having authority to license any undertaking shall, prior to the approval of the expenditure of any Federal funds . . . , take into account the effect of the undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register. The head of any such Federal agency shall afford the Advisory Council on Historic Preservation . . . a reasonable opportunity to comment with regard to such undertaking. [16 U.S.C. § 470f.]

The regulations promulgated thereunder provide:

For each property included in or eligible for inclusion in the National Register

that is located within the area of the undertaking's potential environmental impact the Agency Official, in consultation with the state Historic Preservation Officer, shall apply the criteria of effect, set forth in § 8008, to determine whether the undertaking has an effect upon the property. Upon applying the criteria and finding no effect, the undertaking may proceed. The Agency Official shall keep adequate documentation of a determination of no effect. [36 C.F.R. § 800.4(b).]

A Federal, federally assisted, or federally licensed undertaking shall be considered to have an effect on National Register property or property eligible for inclusion in the National Register when any condition of the undertaking causes or may cause *any change* beneficial or adverse, in the *quality* of the *historical,* architectural, archeological, or *cultural character* that qualifies the property under the National Register Criteria. [36 C.F.R. § 800.8.] (Emphasis added.)

If it is determined that there is an effect, the Agency Official in consultation with the state Historic Preservation Officer, shall apply the Criteria of Adverse Effect, set forth in § 800.9 to determine whether the effect of the undertaking is adverse. [36 C.F.R. § 800.4(c).]

Adverse effects include:

(a) Destruction or alteration of all or part of a property;

(b) Isolation from or *alteration of its surrounding environment;*

(c) *Introduction of visual, audible or atmospheric elements that are out of character with the property or alter its setting.* [30 C.F.R. § 800.9.] (Emphasis added.)

Finally, if the effect is determined to be adverse:

the Agency Official shall: (1) request in writing the comments of the Advisory Council; (2) notify the State Historic Preservation Officer of this request. . . [36 C.F.R. § 800.4(e).]

.    .    .    .    .

the Executive Director shall consult with the Agency Official and State Historic Preservation Officer to determine whether there is feasible and prudent alternative to avoid or satisfactorily mitigate any adverse effect. [36 C.F.R. § 800.-5(d).]

The defendants argue that the EPA determined that OECC would have no effect on the Indian mounds in Highbanks Park and that this determination does not constitute an abuse of discretion. The defendants assert, then, that this determination may not now be challenged. *Ely v. Velde,* 451 F.2d 1130, 1138 (4th Cir. 1970).

In support of their position that they have complied with 40 C.F.R. § 800.4(b), defendants cite to two letters from the state Historic Preservation Officer at pages J–30–31 of the EIS. The defendants apparently read these letters to say that the OECC would have no effect on the Indian mounds in Highbanks Park. The Court cannot agree with this reading on the present record. These letters may be reasonably construed to refer only to the eligibility of the proposed construction site for listing in the National Register, rather than to possible effects on the historic sites in Highbanks Park. Further, these letters reserve opinion and urge that archeological surveys be conducted. While those surveys have been completed and the results submitted to the Ohio Historical Society for their review, the Court finds no indication in the record of what, if any, action the Ohio Historical Society has taken.

The final EIS notes that some impact can be expected on the Highbanks Park. See pages 5–40–43 and 5–47. The impact on the Indian mound sites is not clear. The plaintiffs have also questioned whether the defendants have kept adequate documentation as to the finding of no effect, as required by 36 C.F.R. § 800.4(b).

The Court finds to exist a genuine issue as to material fact with respect to this issue. Summary judgment is therefore denied.

## VIII

The plaintiffs allege in count nine that the Delaware defendants have not

obtained a permit to install the proposed plant as required by R.C. 6111.03(J) and Rule OAC 3745–31, *et seq.* (formerly EP 30 *et seq.*) The plaintiffs further contend that the construction plans submitted to the OEPA differ from the proposed system in the last stage disinfection process.

While the defendants concede that they have not obtained a permit under this section, they argue that such a permit is not required, and that, nonetheless, OEPA has approved the plant for construction. The Director of the OEPA has indicated by affidavit that the 1973 construction plans submitted to the OEPA pursuant to R.C. 6111.-44, and thereafter approved, meet the requirements of state law. The Director construes the regulations cited by plaintiffs to apply only to those applications submitted after the effective date of those regulations; January 1, 1974. It further appears that the plans considered by the OEPA include the use of ozonation rather than chlorination treatment in the last stage of disinfection process.

The OEPA has approved the construction plans and construed its own regulations to not require a further permit prior to plant construction. The Court does not find the action of the OEPA to be unreasonable. Summary judgment is therefore granted in favor of the defendants with respect to count nine.

## IX

In count ten of their complaint the plaintiffs allege that the defendants have failed to obtain permission for the construction of the OECC upon a scenic river from the Director of the Ohio Department of Natural Resources, as required by R.C. 1501.17. At the time the complaint was filed only tentative approval had been issued in a letter from the Director dated February 21, 1975. By letter dated April 26, 1977, however, the Director gave final approval to the initial phase of the OECC as proposed. It is unnecessary for the Court to reach the questions of the constitutionality of the Ohio Scenic River Law or the approval of future plant expansions at this time. Summary judgment for the defendants is granted with respect to count ten.

## X

Count eleven relates to the permit required for construction of interceptor sewers across or beneath the Olentangy River pursuant to the River and Harbor Act, 33 U.S.C. § 403. It appears to the Court that such a permit has now been granted by the Army Corps of Engineers. Summary judgment is therefore granted in favor of the defendants.

## XI

In count twelve plaintiffs Ingling and Nagel allege that the Delaware defendants plan to make property assessments to provide local funding for the OECC, and will require these plaintiffs to tie into the OECC system and discontinue on-site sewage disposal even though such systems have not been found inadequate. These plaintiffs allege that the actions of the Delaware defendants will result in no benefit to plaintiffs and serve no legitimate public purpose. Thus, plaintiffs argue that such action by the Delaware defendants would be arbitrary and capricious and a deprivation of property without due process of law.

■ The Delaware defendants have submitted a resolution of the Board of County Commissioners dated July 18, 1977, which provides that the construction costs of the OECC will be paid by the county-at-large and without special assessments. Thus, the claims of plaintiffs relating to special assessments are not well taken.

■ The Court further finds that there is no genuine issue as to material fact concerning the public purpose of the proposed OECC. Although there has been no showing that the sewage treatment facilities of these particular plaintiffs is inadequate or a health hazard, the EIS shows clearly that there are general sewage treatment and public health problems in the area to be served by the OECC. Thus, while the OECC may not personally benefit any of the plaintiffs, it will serve a public purpose by alleviating the existing water quality problems and those expected in the future.

Those future problems include not only those which may be caused by development stimulated by the OECC, but also that growth which is expected regardless of whether the OECC is built.

The Court finds that a fair reading of the EIS supports only one reasonable conclusion; the OECC is proposed to serve a legitimate public purpose. The defendants' motions for summary judgment with respect to count twelve are granted.

## XII

Count thirteen alleges a violation of the Federal Water Pollution Control Act, 33 U.S.C. § 1281 *et seq.* Section 1291 provides that

> No grant shall be made for a sewage collection system under this subchapter unless such grant  .  .  .  (2) is for a new collection system in an existing community  .  .  .

The plaintiffs assert that the OECC is a sewage collection system intended to serve communities not in existence in 1972 when the act was passed. Federal funding would therefore not be permitted under § 1291.

While it is clear from the EIS that the OECC has been proposed to alleviate waste water treatment problems in the existing community (an "area with substantial human habitation on October 18, 1972," 40 C.F.R. § 35.925–13), it is also clear that the OECC has the additional purpose of serving future growth, including housing subdivisions, which are expected in the area. The legislative history of Section 1291 suggests that Congress intended the cost of sewage collection systems for new communities (including subdivisions) to be addressed in the planning of such areas and as development costs rather than under the construction grant program.

The defendants deny, by affidavit, that any part of the grant funds are to be used for sewage collection systems. The grant agreement annexed to the federal defendants' motion indicates, however, that "[t]he project consists of the construction of intercepting sewers, *a sewage collection system,* and a wastewater treatment plant." (Emphasis supplied.) Although "sewage collec-

tion system" is not defined in the act, it is defined in the regulations promulgated thereunder. 40 C.F.R. § 35.905–19.

On the present record the Court finds there to exist a genuine issue as to material fact with respect to count thirteen. The Court believes the present record inadequate to determine where collecting sewers terminate and interceptor sewers begin, which collecting sewers are to serve existing rather than new communities, and the scope of federal funding for collecting sewers.

Summary judgment is therefore denied with respect to count thirteen of the complaint.

### Conclusion

For the reasons set forth hereinabove, the defendants' motions for summary judgment are ordered to be and hereby are DENIED with respect to counts 1, 2, 3, 4, 8 and 13, and GRANTED with respect to counts 5, 6, 7, 9, 10, 11 and 12.