counsel will be met by the appropriate sanction.

### B. Defendant's Motion to Dismiss

■ The Court now disposes of defendants' motion to dismiss by first noting the remarkable similarities of the facts in this case to those of *Charles v. HOVIC.*

Plaintiffs in both cases are former HOVIC employees claiming discrimination in their termination from employment; filed discriminatory firing claims with the EEOC and, subsequently, received "right to sue" letters; and alleged discrimination in promotions and wages in their complaints. Defendants in both cases asserted that plaintiffs' claims were barred because they had not first been raised with the EEOC, and cast their motion as one to dismiss or, in the alternative, for partial summary judgment. In both cases the parties included material beyond the pleadings, justifying treating defendants' motion as one for summary judgement.

Defendants here have also interposed the same authority relied upon in *Charles,* namely, *Gilliard v. New York Public Library System,* 597 F.Supp. 1069 (S.D.N.Y.1984). While the *Gilliard* court did not permit plaintiffs to sue for discrimination in wages and promotions where their EEOC complaint was limited to discriminatory termination, this is not the settled standard applied in federal courts, as noted by Judge Finch. *See Charles* at 10 (citing *Emrick v. Bethlehem Steel Corp.,* 539 F.Supp. 653, 656 (E.D.Pa. 1982) and *Montano v. Amstar Corp.,* 502 F.Supp. 295, 296 (E.D.Pa.1980)).

■ What is settled is that the parameters of a civil action for employment discrimination in district court are defined by the reasonable scope of an EEOC investigation of the incident which gave rise to the charges. *Id.* at 6 (citing *Ostapowicz v. Johnson Bronze Co.,* 541 F.2d 394, 398–99 (3d Cir.1976)). Just as they did in *Charles,* plaintiffs have put forward the affidavit of Mr. Bernadin Bailey, a long-time employee of the Virgin Islands Department of Labor. (Plaintiffs' Memorandum, exhibit 1.) Mr. Bailey's affidavit makes clear that the scope of an investigation of plaintiffs' complaint would undoubtedly have included an examination of wages and promotion patterns. Just as in *Charles,* defendants have failed to put forward evidence rebutting the assertions in the Bailey affidavit. For that reason, just as in *Charles,* their motion must be denied.

### III. CONCLUSION

The Court has been burdened in this case by the need to referee yet another needless wrangle between attorneys who let their personal animosities infect the judicial process. Counsel for both parties are hereby admonished that the Court's patience with such antics has ended. All counsel who practice before this Court will henceforth conduct themselves with the highest standards of propriety expected of members of their profession, and the bar of this Territory.

For the reasons set forth in the foregoing, the motion to dismiss or for summary judgment in the alternative will be denied. The motion to strike, the motion for sanctions and the cross motion for sanctions will also be denied. Sanctions in the amount of $500 are imposed, however, on counsel for the defendants, Attorney Beth Moss, under the Court's inherent authority. An appropriate order shall issue.

**Lee P. TOUCHEQUE**

v.

**PRICE BROTHERS COMPANY, et al.**

Civil No. Y–97–2918.

United States District Court,
D. Maryland.

Feb. 19, 1998.

Alfred Neil Kramer, Aberdeen, MD, for Plaintiff.

Charles C. Deeley, Jr., Towson, MD, for Defendants.

## MEMORANDUM OPINION

JOSEPH H. YOUNG, Senior District Judge.

### I.

Plaintiff Lee P. Toucheque brings this civil action under the Racketeer–Influenced and Corrupt Organizations chapter of the Organized Crime Control Act of 1970, as amended, 18 U.S.C. §§ 1961–68 ("RICO"). The case is before the Court on Defendants' motion to dismiss and Plaintiff's motion to amend the complaint. Defendants maintain the complaint fails to state a claim upon which relief may be granted, FED. R. CIV. P. 12(b)(6), and Plaintiff seeks to amend his complaint to address certain issues raised in Defendants' motion.

The complaint alleges that Plaintiff, a New Jersey resident and an independent contractor, hauls materials in a truck that he owns, and in 1992, contracted with Transamerican Transport, Inc. to haul concrete pipe for its customers, including Defendant Price Brothers Company ("Price Brothers"), an Ohio corporation. The pipe was picked up at Price Brothers' yard in Perryman, Maryland and delivered to construction sites.

Six months after he began hauling pipe for Price Brothers, Plaintiff alleges he was approached by Defendant Rick Sconion, a production control traffic manager for Price Brothers. Sconion allegedly told Plaintiff that he could not continue hauling for Price Brothers unless he "gave" Sconion two leather jackets. Sconion allegedly made similar demands shortly thereafter, demanding that Plaintiff discontinue his contract with Transamerican and enter into a new contract with Alert Motors, and that Plaintiff pay Sconion $200 per week to continue hauling. Plaintiff allegedly complied with these demands because he feared he would lose his business if he failed to do so, and was allegedly threatened with force and violence. Plaintiff also alleges that Sconion demanded he purchase a second truck for his business; that Sconion subsequently required him to pay an additional $200 per week; that Sconion urged him to contract with Liedtka Trucking, Inc. and to purchase a third truck; and later forced Plaintiff to pay a total of $500 per week for the privilege of hauling for Price Brothers. Plaintiff allegedly complied with these demands for fear of losing his business and for fear of suffering physical violence.

At the time of these alleged events, Plaintiff states that Defendant Charles Vaughn,

employed as a yard boss for Price Brothers, approached him in 1994 and demanded $10 for each trailer of goods hauled. Plaintiff further alleges that Sconion demanded that he purchase certain gifts for Vaughn, and that he complied at a cost of approximately $11,000. In 1995, Sconion allegedly told Plaintiff to purchase a third trailer, and Vaughn told Plaintiff that Sconion and Vaughn would sell Plaintiff a trailer for $14,-000. After allegedly purchasing the trailer, Plaintiff states he was detained by the Harford County, Maryland Sheriff's Department because the trailer had been previously stolen. Plaintiff alleges that he paid a total of $83,180 to Defendants Vaughn and Sconion as a result of their actions. Count I of the complaint alleges a violation of 18 U.S.C. § 1962(c) by all Defendants; Count II alleges a conspiracy to violate § 1962(c) by all Defendants under 18 U.S.C. § 1962(d); and Counts III and IV allege state law claims for intentional interference with contract and interference with an economic relationship.

Defendants contend that Counts I and II fail to state a claim upon which relief can be granted because Plaintiff fails to allege an ongoing, continuous pattern of racketeering activity. The individual Defendants contend Counts I and II must be dismissed because no "conduct" occurred within the meaning of § 1962(c). Defendant Price Brothers argues that Count I must be dismissed because Price /Brothers cannot be a RICO "enterprise" and a defendant under § 1962(c); because it cannot be liable on a theory of *respondeat superior;* because these defects cannot be cured by amendment; and because Count II is premised on a defective § 1962(c) claim. In response, Plaintiff seeks to amend the complaint to include new allegations and two additional RICO counts under 18 U.S.C. §§ 1962(a) and (b). Defendants argue the proposed amendments are futile and do not remedy the original complaint's defects. Finally, Defendants move to strike "redundant" RICO-related material from the state law counts and to strike Plaintiff's demand for punitive damages.

## II.

Defendants argue that Counts I and II must be dismissed under Rule 12(b)(6) for failure to state a claim. Such motions should be granted only in the most limited circumstances where a plaintiff is not entitled to relief under any set of facts which could be proved in support of the claim. *Rogers v. Jefferson–Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir.1989). In analyzing a motion to dismiss under this Rule, the Court construes the complaint in the light most favorable to the plaintiff and presumes the truth of all allegations therein. *Finlator v. Powers,* 902 F.2d 1158, 1160 (4th Cir.1990); *Waterford Citizens' Ass'n v. Reilly,* 970 F.2d 1287, 1290 (4th Cir.1992).

Count I purports to state a RICO claim under § 1962(c). To state a claim under this section, a plaintiff must prove: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Defendants argue that Count I fails to state a claim because the complaint does not allege a continuous pattern of racketeering activity and must be dismissed as to all Defendants.

 The pattern requirement ensures that only individuals engaging in widespread fraud are branded "racketeers" and subjected to the serious consequences of violating the RICO statute. *Menasco, Inc. v. Wasserman,* 886 F.2d 681, 683 (4th Cir.1989). Establishment of a "pattern" under § 1962(c) requires at least two separate predicate acts of racketeering activity which are related and either amount to or pose a threat of continued criminal activity. *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Palmetto State Med. Ctr. v. Operation Lifeline,* 117 F.3d 142, 148 (4th Cir.1997).[1] *Northwestern Bell,* drawing on a separate section of the Organized Crime Control Act of 1970, indicated that the predicate acts are "related" if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not iso-

---

1. Defendants do not dispute the allegation that their actions constitute extortion under Maryland law, which is a predicate act of racketeering under 18 U.S.C. § 1961(1).

lated events." 492 U.S. at 240, 109 S.Ct. 2893. The predicate acts are "continuing" if they constitute either a closed period of repeated conduct, or past conduct whose nature "projects into the future with a threat of repetition." *Id.* at 241, 109 S.Ct. 2893. The existence of a RICO "pattern" is determined by a common sense, case-by-case factual analysis. *E.g., Parcoil Corp. v. NOWSCO Well Serv., Ltd.,* 887 F.2d 502, 504 (4th Cir. 1989) (citing *Northwestern Bell,* 492 U.S. at 242, 109 S.Ct. 2893). The Court may consider the number and variety of predicate acts, the length of time involved, the number of victims, the presence of separate schemes, and the potential for multiple, distinct, injuries in determining whether a pattern satisfies the continuity requirement. *Id.*

Defendants urge that the continuity requirement is not satisfied because the alleged scheme is not ongoing and does not threaten future criminality. This argument ignores the plain language of *Northwestern Bell,* which focuses not on whether the scheme is ongoing, but on whether *repetitive acts* have occurred. See *Walk v. Baltimore & Ohio R.R.,* 890 F.2d 688, 689–90 (4th Cir.1989) (noting that continuity could be found where a "closed period" of racketeering activity exists if "the activity had extended within that period 'over a substantial period of time.'") (quoting *Northwestern Bell, supra*). Indeed, the "sheer duration of criminal activity" can demonstrate continuity in closed period situations. *Walk, supra,* at 690. Thus, the requirement is satisfied *both* by a closed period of repeated past activity which has come to an end, *and* by past conduct which threatens to be repeated. *Northwestern Bell, supra,* at 241.

■ Congress did not intend for RICO to be a stalking-horse for the punishment of every wrongful act. However, the Court concludes that Plaintiffs allege sufficient facts to demonstrate a pattern of racketeering activity under RICO. The complaint alleges continuous predicate acts over a three-year period which are related and which reflect a highly-organized scheme to extort over $80,000 from Plaintiff and, perhaps, from other drivers. Unlike many of the cases cited by Defendants, the scheme al-

leged here had no fixed goal which would terminate upon the occurrence of a specific event, but rather had the goal of continuing extortion of money for the duration of Plaintiff's affiliation with Price Brothers. *Cf. Menasco, supra* (isolated instance of garden-variety commercial fraud with a single goal which terminated with the defrauding of two investors in oil and gas venture); *Myers v. Finkle,* 950 F.2d 165 (4th Cir.1991) (routine securities fraud which narrowly centered on single, terminable goal of defrauding two corporations); *see also Brandenburg v. Seidel,* 859 F.2d 1179 (4th Cir.1988), *rejected on other grounds by Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (disagreeing with district court's finding of no pattern where scheme alleged had no limiting goal whose accomplishment would terminate the scheme). Further, the extortion alleged in this case recurred every time Plaintiff paid monies to Sconion or Vaughn, and the predicate acts are related because they were directed at the same individual by the same Defendants using the same extortionate methods continuously for three years. Finally, the nature and quality of the kickbacks and extortion alleged are precisely what Congress intended to punish in enacting RICO. *Brandenburg,* 859 F.2d at 1186. Accordingly, the Court finds that Plaintiff has pleaded sufficient facts to withstand a motion to dismiss under Rule 12(b)(6).

## III.

### A.

Defendants next contend that the Court must dismiss Count I as to Defendant Price Brothers because a corporation cannot be both a defendant and a RICO "enterprise", as alleged by Plaintiff.

■ A RICO "enterprise" is an ongoing formal or informal organization whose associates function as a continuing unit. *Operation Lifeline,* 117 F.3d at 148 (citing *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)). In a RICO action brought under § 1962(c), the "enterprise" must be distinct from the "person" alleged to have violated the statute, and

cannot be both the enterprise and a defendant. *Id.* This distinction requirement stems from the purpose of § 1962(c), which is designed solely to reach criminal activity by employees while protecting the innocent corporate enterprise from criminal infiltration. *E.g., Schofield v. First Commodity Corp.*, 793 F.2d 28, 30 (1st Cir.1986).

Plaintiff's sole allegation concerning the "enterprise" is that Price Brothers is an "enterprise" within the meaning of RICO. Compl. ¶¶ 8, 48. Price Brothers, as a legally-recognized corporate entity, can serve as a RICO enterprise. Under Fourth Circuit case law, however, Price Brothers cannot be both a defendant and the RICO enterprise. Dismissal of Count I is therefore appropriate as to Price Brothers. Dismissal of the conspiracy claim as to Price Brothers is appropriate for the same reason. *See New Beckley Mining Corp. v. International Union, United Mine Workers of America*, 18 F.3d 1161, 1165 (4th Cir.1994).

### B.

Plaintiff responds that Price Brothers may be joined as a defendant under a theory of *respondeat superior*. Compl. ¶ 12; Pl.'s Response to Def.'s Mot. at 1. However, the majority of circuits addressing the issue conclude that *respondeat superior* liability is not available under § 1962(c)—at least when the corporation is named as the RICO enterprise. *Schofield v. First Commodity Corp.*, 793 F.2d 28, 32–33 (1st Cir.1986); *Luthi v. Tonka Corp.*, 815 F.2d 1229, 1230 (8th Cir. 1987); *Garbade v. Great Divide Mining & Milling Corp.*, 831 F.2d 212, 213 (10th Cir. 1987); *Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271, 1281 (7th Cir.1989); *Yellow Bus Lines, Inc. v. Drivers, Chauffeurs, & Helpers Local Union 639*, 883 F.2d 132, 140 (D.C.Cir.1989); *Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 425 (5th Cir.1990); *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1411 (3rd Cir.1991); *Brady v. Dairy Fresh Products Co.*, 974 F.2d 1149, 1154 (9th Cir.1992); *Davis v. Mutual Life Ins. Co.*, 6 F.3d 367, 378–80 (6th Cir.1993); *but see Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1406 (11th Cir.1994). The rationale for refusing to apply the *respondeat superior* principle in § 1962(c) cases is that the doctrine stands at odds with Congress' intent to impose liability upon *employees*, not their unknowing and unwitting corporate employers. *E.g., Yellow Bus Lines*, 883 F.2d at 140.

The Court finds the rationale of the majority rule highly persuasive, and holds that a corporation may not be liable as a defendant in a civil RICO action under § 1962(c) on a theory of *respondeat superior* when the corporation is the RICO enterprise.[2]

### IV.

Defendants contend that the RICO counts must be dismissed as to Defendants Sconion and Vaughn because they did not conduct or participate in the affairs of Price Brothers as required by the RICO statute. The rationale for this argument is that Sconion and Vaughn, as lower-level employees, did not as a matter of law "operate" or "manage" the affairs of Price Brothers.

Section 1962(c) requires that a person conduct or participate in racketeering through a RICO enterprise. The seminal Supreme Court case addressing this nexus requirement is *Reves v. Ernst & Young*, 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). The Court first noted that the phrase "conduct or participate", as used in the RICO statute, requires some degree of direction and a role in that direction. *Id.* at 179, 113 S.Ct. 1163. Thus, "participation" in a RICO enterprise requires some role in directing the enterprise's affairs. *Id.* However, the Court specifically noted that the participation requirement does not limit RICO liability "to those with primary responsibility for the en-

---

**2.** Some courts apply this rule in every RICO case under § 1962(c). Other courts carve out exceptions. For example, in *Davis*, the Sixth Circuit indicated that the *respondeat superior* principle could apply if the corporation's employees are part of a separate enterprise and the corporation either encourages, promotes, or perhaps tacitly encourages its employees' unlawful racketeering.

6 F.3d at 378–80. Here, the complaint does not present such a situation and only requires the Court to consider whether, at a general level, the doctrine applies when a corporate entity is the RICO enterprise. Accordingly, the Court will not address the issue, and holds that, as a general rule, *respondeat superior* principles do not apply in a civil RICO action under § 1962(c).

terprise's affairs...but some part in directing the enterprise's affairs is required." *Id.* The Court adopted the "operation and management" test to determine whether someone conducts or participates in a RICO enterprise. The Court did not define a limit as to which lower-level employees may satisfy the nexus requirement, but stated that § 1962(c) liability is not limited to upper management, and noted that an enterprise can be "operated" both by upper management and lower-rung participants under the direction of upper management. *Id.* at 184.

Although the Fourth Circuit has not considered the reach of *Reves*, Defendants seize upon its language to argue that lower-level employees of a RICO enterprise may be liable only when they act at the direction of more senior officials. Defendants seem to imply that lower-level employees may only be liable if upper-level management directs them to engage in racketeering activity. However, the precise issue in *Reves* was whether the enterprise's accountants, who had absolutely no role in the operation or management of the enterprise, could be liable under RICO. The accountants were outsiders and independent of the enterprise, and although they participated in making the decisions by providing information, they neither made decisions nor carried them out. *See United States v. Shifman*, 124 F.3d 31, 36 (1st Cir.), *petition for cert. filed,* —— U.S. ——, 118 S.Ct. 1053, 140 L.Ed.2d 116 (1998). As a case uniquely concerned with outsider liability, *Reves* did not address the issue presented by this case—whether employees who do make decisions or carry them out and who are subject to the direction of upper management, but who commit racketeering acts without the explicit or tacit approval of upper management, satisfy the "operation and management" test.[3]

Nothing in *Reves* limits RICO liability to lower-level employees who commit predicate RICO acts at the express direction of upper management. *United States v. Oreto*, 37 F.3d 739, 751 (1st Cir.1994) ("Congress intended to reach all who participate in the enterprise, whether they are generals or foot soldiers"). *Reves* only requires an employee who knowingly commits predicate acts to be *generally* under the direction of higher management. *Id.; Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1559; *cf. United States v. Viola*, 35 F.3d 37 (2nd Cir.1994) (reversing RICO conviction where defendant, who performed work under direction of upper management, did not know of broader RICO scheme or that he received ill-gotten proceeds). Thus, if a lower-level employee who commits a predicate RICO act is generally under the supervision of higher management, he is liable even if upper management neither knew nor approved of the employee's racketeering activity—provided, of course, that all other requirements of the statute are satisfied. This interpretation of *Reves* is consistent with its holding, because where a RICO defendant is an outsider and not subject to management's direction, liability should not attach because the purpose of § 1962(c) is to penalize *employees* who infiltrate a legitimate enterprise to conduct their nefarious racketeering activities. *Aetna*, 43 F.3d at 1558.

■ The complaint in this case alleges that Sconion and Vaughn were, respectively, a production control traffic manager and a yard boss for Price Brothers. Such positions obviously entail participation in, and conduct of, the Price Brothers enterprise under the *Reves* criteria discussed above because these employees participated in the daily business affairs of Price Brothers and the shipping of goods from the Maryland facility—the bread-and-butter activities of the Price Brothers' business. Sconion and Vaughn's alleged activities constitute knowing implementation of Price Brothers' decisions concerning shipment and transport of goods, albeit by methods possibly unknown to their supervisors.

---

**3.** Obviously, lower-level operatives in the enterprise who act with tacit or explicit approval of the enterprise's upper management engage in sufficient conduct or participation to be liable under RICO. *E.g., United States v. Wong*, 40 F.3d 1347, 1374–75 (2nd Cir.1994) (holding that low-level gang members who committed predicate acts of extortion and murder under overall direction of kingpins were liable in criminal RICO prosecution); *United States v. Workman*, 80 F.3d 688, 697–98 (2nd Cir.), *cert. denied sub nom Rodgers v. United States*, —— U.S. ——, 117 S.Ct. 319, 136 L.Ed.2d 233 (1996).

In short, the complaint paints a picture of Sconion and Vaughn as extortionists who used their official positions at Price Brothers for private gain—precisely the opposite situation from that present in *Viola.* The mere fact that these employees may have been "foot soldiers" in the Price Brothers hierarchy does not relieve them of responsibility for their alleged actions.

Dismissal of Count I as to Defendants Sconion and Vaughn would be inappropriate under Rule 12(b)(6) because the complaint alleges facts which, if true, indicate that these employees participated in the conduct of the Price Brothers enterprise within the meaning of *Reves.*

## V.

Three additional matters require the Court's attention: whether to permit Plaintiff to address the Defendants' RICO arguments by amending the complaint, whether to strike Plaintiff's demand for punitive damages from the RICO counts, and whether to strike "redundant" material from Plaintiff's state-law claims.

## A.

In response to Defendants' motion, Plaintiff seeks to amend his complaint to add two RICO counts under § 1962(a) (Am. Compl.¶¶ 88–99). Plaintiff also seeks to add substantive allegations to the complaint's general statement of facts clarifying the precise duties of Defendants Sconion and Vaughn (Am. Compl. ¶¶ 9 & 10); indicating that Price Brothers knew of, acquiesced in, and benefited from the alleged extortionate activities (Am.Compl.¶¶ 15–18); naming other individuals who were victimized by Defendants' alleged conduct (Am.Compl.¶ 42); and further specifying the activities of Sconion and Vaughn (Am.Compl.¶¶ 51–52).

■ Under FED. R. CIV. P. 15(a), the Court finds no harm in permitting the amendments in Paragraphs 9, 10, 15–18, 51, and 52 of the proposed Amended Complaint. A motion to amend should be denied only if

undue delay and prejudice would result to the non-movant. *In re Jeffrey Bigelow Design Group, Inc.,* 956 F.2d 479, 482 (4th Cir.1992). The proposed amendments simply enhance the specificity of certain allegations in the complaint and are obviously a response to some of Defendants' objections. Defendants do not demonstrate prejudice or undue delay, and the amendment was offered when its need became apparent to Plaintiff. *Deasy v. Hill,* 833 F.2d 38, 40 (4th Cir.1987). The amendments will not result in the Court retaining the claims against Price Brothers under § 1962(c) or (d) because as discussed above, Price Brothers may not be both a RICO enterprise and a defendant, and the amendments do not change this legal principle. However, the amendments do add greater specificity and clarity to the allegations concerning the alleged pattern of racketeering activity and the conduct of the individual Defendants.

■ The Court may also deny a motion to amend if the amendment is futile—that is, if the proposed amendment is facially insufficient or frivolous. *New Beckley Min. Corp. v. International Union, United Mine Workers of America,* 18 F.3d 1161, 1164 (4th Cir. 1994); *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 510 (4th Cir.1986). Defendants correctly note that addition of the two new RICO counts would be futile because they are defective. Plaintiff's effort to add counts under § 1961(a) and (b) is an obvious attempt to circumvent the distinctiveness requirement of § 1962(c). The Fourth Circuit follows the prevailing view that this distinctiveness requirement does not apply in RICO actions under § 1962(a). *Busby v. Crown Supply, Inc.,* 896 F.2d 833, 841 (4th Cir. 1990).[4] Section 1962(a) requires a showing that funds derived from racketeering were used or invested in the enterprise. *See United States v. Vogt,* 910 F.2d 1184, 1196 (4th Cir.1990). Although proposed Count IV alleges in conclusory fashion that Defendants received income from racketeering activity and used it for the establishment or operation of Price Brothers, it does not explain

---

**4.** The Court finds that the same analysis applies because the statutory language of § 1962(b) is more like that of § 1962(a) than § 1962(c). *See*

*Liquid Air Corp. v. Rogers,* 834 F.2d 1297, 1307 (7th Cir.1987).

how Price Brothers received such monies, or how any of the Defendants used or invested such monies in Price Brothers. Accordingly, Plaintiff's proposed amendment fails to state a claim upon which relief could be granted because it does not allege the appropriate nexus between the racketeering income and the enterprise required by federal law, and is therefore futile.

 Count VI, which alleges a violation of § 1962(b), is similarly flawed. This section prohibits acquiring control of an enterprise through a pattern of racketeering activity, and requires that the pattern of racketeering activity be the cause of the acquisition of control. *von Bulow by Auersperg v. von Bulow*, 634 F.Supp. 1284, 1307 (S.D.N.Y.1986); *In re VMS Secs. Lit.*, 752 F.Supp. 1373, 1403–04 (N.D.Ill.1990). Proposed Count VI fails to allege how the pattern of racketeering activity caused any of the Defendants to acquire control in Price Brothers; it simply alleges that Price Brothers and the individual Defendants used Price Brothers to conduct racketeering activity. Accordingly, this amendment must fail because it does not state a claim under § 1962(b).

For the foregoing reasons, the Court will grant in part and deny in part Plaintiff's motion to amend. The Court will permit the amendments to the pleading described above, but will not permit Plaintiff to add substantive RICO counts under § 1962(a) and (b).

### B.

 Defendants seek to strike the demand for punitive damages contained in Counts I and II on the ground that punitive damages are not available in civil RICO actions. The prevailing view is that punitive damages are not available because the treble damages provisions of the RICO statute are punitive in nature. *See Bingham v. Zolt*, 823 F.Supp. 1126, 1135 (S.D.N.Y.1993), *aff'd*, 66 F.3d 553 (2nd Cir.1995); *Standard Chlorine of Delaware, Inc. v. Sinibaldi*, 821 F.Supp. 232, 252–53 (D.Del.1992); *see also Genty v. RTC*, 937 F.2d 899, 914 (3rd Cir.1991) (noting that RICO treble damages provisions are punitive in nature and holding that such damages are not recoverable against munici-

palities); *but see Com–Tech Assocs. v. Computer Assocs. Int'l, Inc.*, 753 F.Supp. 1078, 1093 (E.D.N.Y.1990), *aff'd*, 938 F.2d 1574 (2nd Cir.1991) (permitting RICO claim with punitive damages demand at pleading stage of litigation, but reserving question of whether punitive damages are in fact available).

As the Third Circuit noted in *Genty*, Congress' decision to furnish a civil remedy greatly in excess of a plaintiff's actual damages, and its intent to strike at the heart of organized crime in passing the statute, confirm that the treble damages provision is punitive. 937 F.2d at 911–13 (citing cases). Accordingly, the Court holds that punitive damages are unavailable in a civil RICO action because the mandatory treble damages provisions of the statute furnish a punitive damages remedy, and will grant Defendants' motion to strike the punitive damages demands from Counts I and II.

### C.

 Finally, Defendants move to strike "redundant" material from Counts III and IV, which are state law tort claims for intentional interference with contract and interference with economic relationship. In Counts III and IV, Plaintiff incorporates by reference all the earlier allegations contained in the RICO counts. Defendant contends this information is redundant and irrelevant to the state law claims. The Court's decision to retain Counts I and II of the complaint as to the individual Defendants renders this motion moot. However, the Court also notes that mere redundancy does not suffice to grant a motion to strike under FED. R. CIV. P. 12(f); rather, the movant must demonstrate prejudice. *Westmoreland Asbestos Co. v. Johns–Manville Corp.*, 113 F.2d 114 (2nd Cir.1940); *United States v. Fairchild Indus., Inc.*, 766 F.Supp. 405, 408 (D.Md.1991); *SEC v. Lorin*, 869 F.Supp. 1117, 1120 (S.D.N.Y. 1994) (affirmative defense). Defendants' conclusory and speculative arguments that prejudice could result and that the racketeering allegations are prejudicial do not demonstrate any palpable prejudice. Further, the information contained in the proposed amendments is relevant to the state law

claims in Counts III and IV. Accordingly, the Court will deny the motion.

## VI.

Counts I and II of the complaint fail to state a claim upon which relief can be granted against Defendant Price Brothers Company because a corporation cannot, as a matter of law, serve as both RICO enterprise and named defendant in a civil RICO action under 18 U.S.C. § 1962(c), and because a corporation is not liable in a civil RICO action for the racketeering acts of its employees on a theory of *respondeat superior*. However, the Court finds that Plaintiff has pleaded sufficient facts demonstrating a pattern of racketeering activity and the individual Defendants' participation in the conduct of the enterprise to survive a motion to dismiss under FED. R. CIV. P. 12(b)(6). The Court will also permit Plaintiff to amend his complaint to reflect the changes contained in proposed amended complaint paragraphs 9, 10, 15–18, 42, and 51–52, and will strike Plaintiff's demand for punitive damages from Counts I and II. In light of the decision to retain Counts I and II, the Court declines to strike any further allegations from the complaint.

Based upon the foregoing analysis, Defendants' motion to dismiss the RICO counts and to strike will be granted in part and denied in part, and Plaintiff's motion to amend his complaint will be granted in part and denied in part. Counts I and II of the complaint will be dismissed as to Defendant Price Brothers Company, but not as to the individual Defendants. Plaintiff's demands for punitive damages will also be stricken from Counts I and II, and Plaintiff will be permitted to file an amended complaint consistent with this Memorandum within twenty (20) days.

## ORDER

In accordance with the attached Memorandum, it is this 19th day of February 1998, by the United States District Court for the District of Maryland, ORDERED:

1. That Defendants' Motion To Dismiss RICO Counts And To Strike Redundant Material From Tort Counts (Paper No. 9) BE, and hereby IS, GRANTED IN PART AND DENIED IN PART; and

2. That Plaintiff's Motion To File An Amended Complaint (Paper No. 15) BE, and hereby IS, GRANTED IN PART AND DENIED IN PART; and

3. That Counts I and II of the Complaint BE, and hereby ARE, DISMISSED WITH PREJUDICE as to Defendant Price Brothers Company; and

4. That Plaintiff's demands for punitive damages contained in Counts I and II of the Complaint BE, and hereby ARE, STRICKEN; and

5. That leave to file an amended complaint consistent with the attached Memorandum BE, and hereby IS, GRANTED, provided that the amended pleading be filed within twenty (20) days of the date of this Order and in accordance with Local Rule 103(6) of this Court; and

6. That a copy of this Memorandum and Order be mailed to counsel for the parties.